Okay, the next case before us is 19-2206, Caterpillar v. Wirtgen. Mr. Meraz, are you prepared to begin? I am. Thank you, Your Honor. Okay, you may. May it please the Court. There is a clear legal standard that governs this appeal. It originated with Ariosta. It was applied in Genzyme, Anacor, and Apple V. Andrea, and in the Infinium case that just issued a few days ago, and that's Appeal Number 2020-1333. Under this legal standard, the Board must consider new evidence presented at the reply brief stage in an IPR if that evidence is either one, responsive to the patent owner's arguments, or two, state-of-the-art evidence showing how a skilled artisan would view the prior art combination presented in the petition. A failure to consider evidence that satisfies either of these two requirements warrants a remand. And here, Caterpillar satisfies both requirements. And to be clear, Your Honors, Caterpillar does not present a substantial evidence-type argument in this appeal. The Board expressly refused to consider Caterpillar's manual mode argument and the related Rotec manual mode evidence, and this is what invokes the Anacor and Apple legal standard and the need for a remand. Regarding the prong of the legal standard that permits rebuttal evidence, the Rotec evidence rebuts Workin's argument that no skilled artisan would use a lake sensor-only design in the manual mode feature. And for the second prong, the state-of-the-art prong, the Rotec evidence is state-of-the-art evidence that proves a skilled artisan would have combined the Swisher and Glasson references just as Caterpillar proposes. So this court's precedent requires a remand, so the Rotec manual mode evidence can be considered. But we would have to find that the Board abused its discretion in concluding that that was new evidence and not evidence that was responsive to something that you couldn't have anticipated, right? Yes, Your Honor, the abuse of discretion standard applies, although here this is really driven by the law. The law is clear in defining when the parties are allowed to submit new evidence at the reply brief stage. If that legal standard is met, then the result necessarily follows. And what I mean by that is if the Board properly considered newly submitted evidence that it was required to consider under precedent, then an affirmance will follow on appeal. And conversely, if the Board does not consider newly submitted evidence that it was required to consider under precedent, then a remand will follow on appeal because that's an automatic abuse of discretion. And here the Board did not consider evidence it was required to consider under precedent under the Anacor and Apple line of cases. So a remand is necessary because an abuse of discretion occurred. So really the analysis turns on whether the legal standard is met is the sum and substance of my point, Your Honor. And it is met twice. It's met under prong one of the Anacor test because the evidence is responsive. There's no question that the Rotec manual mode evidence is responsive to the arguments in Workin's patent owner response. And that's the key. These arguments were made in Workin's patent owner response. In its petition, Caterpillar presented a Swisher and Glasson combination and one of the prepared modifications involved using Glasson sensors on Swisher's legs alone to perform milling operations. And this is the leg sensor only modification in our brief. Workin in response said that a skilled artisan wouldn't do this. Specifically, it said the only way to use a leg sensor only design would be to have a machine with a manual mode where the operator is manually controlling the legs. Workin then called this design, quote, exceedingly difficult. It said this in its patent owner response appendix page 1320. And it made this argument when challenging Caterpillar-Swisher-Glasson combination. The high materiality of the Rotec manual mode evidence lies in the fact that it proves Workin's argument wrong. It shows that Rotec successfully marketed and sold a road milling machine that had a manual mode where only leg sensors were used to perform milling operations. The Rotec evidence proved that a design Workin says no skilled artisan would do is commercially viable in the road milling machine industry. So because the Rotec evidence is rebuttal evidence, it had to be considered under this court's precedent. And the board's failure to do so means a remand is necessary. It's also important... Would you mind just giving me the JA site to the Workin assertion that no skilled artisan would do? Where do I find that in? It's APPX 1320. That's where they talked about the failure of a skilled artisan to want to combine or the lack of a desire of a skilled artisan to want to combine the Swisher and Glasson combination in a leg sensor only manner, because doing so would be, quote, exceedingly difficult. Workin also made this argument in its preliminary patent owner response. And that was at... One second here. APPX 1138. And 1139. And it's not just that they said the manual mode where they expressively referred to the concept of manual milling was exceedingly difficult. It's that they made this argument in response to the Swisher-Glasson combination. So they linked it to the main theory that Caterpillar asserted in its petition. Just to be clear, and I apologize if I'm being dunderheaded, the statement that Workin makes at the two places, I think it's identical. After Caterpillar's proposed modification, unless the operator manually adjusts the height of the lifting columns during travel, an exceedingly difficult task, the milling operation will be defective. So what that sentence says, just by its terms, as I understand it, is that raising the thing during travel manually is exceedingly difficult. Is that the same point that you think RX 500 responds to? That's exactly right, Your Honor. I think the point that they're trying to make there is that a skilled artisan would not opt for a design where you rely only on leg sensors to mill. Because to do that, you would have to have this manual mode of operation where the user or the operator is standing on top of the milling machine in the console and moving the legs as you mill to keep them where you want in the desired position. They said, Workin said in its patented response, that this is exceedingly difficult, suggesting that no skilled artisan would do this. But what RoadTech proves is that someone would do this. And not just hypothetically, it proves that it was actually done before. That's why the evidence is so compelling. Because it takes the evidence that Workin provides, which is hypothetical evidence from an expert, and it shows that this was actually done in reality, in real world, not just anywhere, but in a real world milling machine, the exact type of machine that the patent covers. So Workin's argument, whether they're right or they're wrong, at a minimum, the RoadTech evidence rebutts this Workin's argument squarely, Your Honor. So the sum and substance of the argument is because alone, because of this rebuttal position, because the RoadTech evidence is rebuttal evidence, it had to be considered under ANICOR. And the board's failure to do so means a remit is necessary. But this isn't a case where only one of the two prongs is satisfied. The other prong is satisfied as well, because the evidence is not simply, we're not using the RoadTech evidence to rehash or redo the original combination in the petition. The RoadTech evidence is supplemental. It's supplemental state-of-the-art evidence. It does not replace or change the Swisher and Glasson grounds. And this distinction is important because this is why we're like ANICOR and Apple and not like the cases Workin cites. More specifically, Caterpillar argued in its petition that a skilled artisan would have used Glasson sensors on Swisher's legs. So the question becomes, would a skilled artisan ever make this modification? In patent cases, as we just discussed, this usually boils down to a hypothetical analysis. But here we have... What is your response to Workin's position that the RoadTech RX500 reference was not publicly available? Well, that's a red herring, Your Honor. So first, there were multiple layers of the RoadTech evidence that were presented. There were the manuals, and there was the testimony from the RoadTech witness. The testimony from the RoadTech witness alone is state-of-the-art evidence from a person of skill in the art. That's sufficient alone to warrant a remand here, the inclusion of that. That evidence was considered by the ALJ in the ITC case. It came in there, and Workin was at the deposition and had a chance to cross-examine this witness. So there's really no dispute that this evidence would be admitted. I know Workin filed a motion to exclude this transcript, but there's really not much of a dispute left after that point, after knowing that Workin was there to cross-examine the witness, because Workin simply argued that we didn't serve a trial subpoena, Caterpillar didn't serve a trial subpoena in the IPR, but that doesn't have to happen. The caption call case, for example, says that's not necessary. So that evidence alone warrants a remand, but in addition to that, we also have the manuals. The manuals had disclosed features that were embodied in the machine that the witness testified about, the Rotec witness. First of all, these manuals were publicly available. The evidence shows that. The testimony from the Rotec witness shows that. But even if they weren't publicly available, these were features that were in the actual machine that was sold. So we have other evidence that we put in that shows that there was a sale of the Rotec RX500 machine before 2003, and that evidence showed that people were using the machine. That viewed in combination with the testimony from the Rotec expert is additional evidence about what the features in that machine were. This all really boils down to there are multiple layers of evidence that Workin will have to eliminate from the case to make a remand unnecessary. There's no suggestion that it can do that. The evidence is so squarely within this case. It was admitted in the ITC case for the same reasons I'm giving you here, and in addition to that, the ITC found that this Rotec machine anticipated Claim 1 of the 530 patent, the same claim that's at issue here.  This Rotec evidence stands on its own. The evidence is contemporaneous documentary evidence. It shows what the Rotec features are. We have the testimony I just described. This Rotec witness is a long-tenured, highly experienced employee who actually installed the lake sensors on the machine. The standalone Rotec evidence is part of the administrative record. It is independent, third-party evidence showing that the Swisher & Glasson-based lake sensor-only design described in Mr. Labus's declaration would have been obvious. It shows a skilled artisan would have made the modification Mr. Labus proposes. So this court's precedent doesn't allow the Board to ignore this type of evidence, and a remand is necessary to make sure that it is at least considered. And just to clarify one point about Your Honor's question, whether the evidence is admissible or not hasn't been decided yet. That's not here on this appeal to be decided. The court denied that motion as moot because it declined to consider the evidence, the Rotec evidence in the first place. So a remand would be necessary to first have the court rule on that motion if it gets re-raised by Workin. But it certainly isn't appropriate here to make any findings based on whether the evidence is admissible because it's not before the court. Now, there is no dispute that, and Workin can't dispute this, that state-of-the-art evidence doesn't have to be publicly available. And this goes back to Your Honor's question as well. It can be evidence that a company had inside its own premises that no one ever saw. If it's been practicing the invention, limitation by limitation in the claim before the priority date of the patent, that is highly material state-of-the-art evidence, regardless of whether it was publicly available or not. I'll reserve the— Okay, we'll give you the rest of it. Mr. Levy? Yes, Your Honor. Okay, you may begin. Thank you. Good morning. May it please the Court, Ryan Levy on behalf of Workin America. The Board rejected as unpersuasive Caterpillar's reason for modifying Swisher on Glasson in view of the expert's shifting reasoning and conflicting testimony. And the Board did credit the substantial evidence of Workin's expert that there was no reason a POSTA would replace Swisher's external reference sensors with Glasson's in-leg sensors to shield them from a harsh environment. The Board gave little weight to Caterpillar's shift to a second adding sensor argument because this argument was driven by hindsight and lacked evidentiary support. But the Board did specifically say it wasn't considering this road-tech evidence, right? No, Your Honor. I believe the Board did consider the road-tech evidence, at least for the arguments it did present. So, specifically, Your Honor... So you're saying the Board didn't refuse to consider the evidence, it just refused to consider the manual milling rationale? Right, Your Honor. If we look to the final written decision, all that we see the Board states that it did not consider was the manual milling rationale itself. It deemed the manual milling rationale non-responsive, lacking both foundation and expert testimony. It was well within its discretion not to consider that argument along with the evidence associated with it. But we do see elsewhere, Your Honor, in the final written decision that the Board reviewed the petitioner's analysis, evidence, and citation. For example, on Appendix 16. Also on the same page, Your Honor, the Board states, based on the entire record, that it agreed with the patent owner and determined that the petitioner had failed to meet its burden. So we also have a discussion... What is your response to your friend on the other side saying that actually the manual milling rationale was directly responsive to your argument that it wouldn't be done or that one of skill and the art would not do the combination? Your Honor, I do not believe it's responsive. And this comes down to what Workin actually argued in its patent owner's reply. So as an initial matter, Workin never stated that a machine cannot mill with a leg sensor-only configuration. And this is key because what the PTAB did, it made a critical determination that Swisher was directed towards precision planing and cannot operate for its intended purpose if its external elevation sensor is removed. And this was based on substantial evidence. Both experts agreed on this point. When Caterpillar's expert was asked, in the combination that he's proposed, would he remove any of Swisher's sensors from a harsh environment, he said, correct, he would not. So what Workin argued in its patent owner's response with an understanding of the intended purpose of Swisher was that removing the external elevation sensors of Swisher would both change a principal operation of Swisher and render it inoperable for its intended purpose. And this was based on what the board found the intended purpose of Swisher was. Swisher, as the board found, required certain precision as well as an external sensor. And the board also did state that a POSA would not remove the external sensor because it was necessary for Swisher and internal lake sensors could not accomplish the same. So as Workin illustrates in its POR, one could still mill but not achieve the precision of Swisher with its external sensors. So the manual milling rationale or the lake sensor only argument, it does not rebut Workin's POR argument that the intended purpose of Swisher would be lost. And if you look throughout Workin's POR arguments, it repeatedly explains how removing Swisher's externally mounted sensors would destroy a key feature as the machine could not refer to an external reference. And Workin even includes an illustration pointing out the differences between a road surface before milling, that road surface milled without an external elevation control system having external sensors, and that road surface milled with an elevation control system like that of Swisher. That's at Appendix 1303. And with this, what you see here is the road surface with the external elevation system, it has this predetermined graven slope, this smooth, flat approach result at the end. And this is because Swisher has this external sensor. Now, additionally, when you look at Caterpillar's petitioner's reply, it states that manual milling was a tangible benefit and that lake sensors exist. But that's not responsive to why a POSA would remove Swisher's external reference sensors and render it unable to provide precision planning. And the board realized this. And they characterized the manual milling rationale as both improper and having no foundation. To put it plainly, Caterpillar never laid out in its petitioner's reply why one of skill in the art would not only combine glass on a Swisher but also modify Swisher to arrive at a lake sensor-only machine. So at one point, Your Honor, Caterpillar also argues that you could add lake sensors whether a machine already had graven slope system or not, completely ignoring the purpose of Swisher. So to go even further, what Caterpillar does to legitimize their argument about manual milling, they repeatedly cut off quotes of Workin's expert to try to give credence to this argument. For example, they do quote Workin's expert where he says, you can begin milling with a manual setup if you wanted to. That's in the blue brief at 27 and also 44. But what Workin's expert actually states is, you can begin milling with manual setup if you want to, but for precision control, you'd have to have some indication of the ground relative to the drum. Workin never argued milling could not occur without external sensors. You just would not have precision control as required by Swisher. So moving back to the petition, Caterpillar just asserted a single ground of- Mr. Levy, this is Jeff Serrato. The only argument we heard this morning from the other side is about RX500. So I guess I'd like you to return to RX500 and explain, just focused on RX500, why the board did not commit an error with respect to whatever it did on the RX500. And I say it in those terms because I guess it's part of what needs clarification, at least for me, is exactly what it did with the RX500. Yes, Your Honor. And so as an outset, one thing to consider with the RX500 is there was no declaration from an expert accompanying that evidence. Right. So that evidence kind of came without explanation, or the board could find without explanation, as to its significance for particular points at issue. But first of all, what do you think exactly the board did with the RX500? Is it like in footnote eight or elsewhere? Your Honor, the board did look to the RX500 evidence, for example, with the second rationale that it permitted Caterpillar to advance based on the questions in the deposition. So, for example, in reference to the adding sensor rationale, one of the statements that Caterpillar made was the RX500 had an automated grade and slope control system, the OMBA, that did not use the lake sensors. So with that statement, Caterpillar never explained how the RX500, if it had an automated elevation control system, why one would use additional data from the lake sensors if that machine never incorporated such at the same time. Otherwise stated, not only did the alleged RX500, it failed to provide any indication as to why one would take the data from the lake sensors to improve the control algorithms or increase the quality of precision milling. It went the other way. The RX500 evidence, all it did was provide an example of a machine with an elevation control system and lake sensors that did not use any data from those lake sensors. And when you look at that rationale, there was no reason, legitimacy to their expert statement that you would use this additional data from the lake sensors when the RX500 had a control system and also in lake sensors, which did not communicate at all. No data from those lake sensors was used to improve the precision milling. And with respect to the lake sensor only rationale. Can I just ask, would it be fair to say or not fair to say that the board did not decline to consider the RX500 but instead examined the RX500 evidence and the lack of explanatory material in the context of the particular combinations and motivations for those combinations and concluded that as to the motivations and combinations being asserted that were timely, the RX500 did not help Caterpillar enough to make its case. I think that's correct, Your Honor. And, you know, speaking hypothetically, maybe if there had been an expert declaration from Caterpillar with the replier, maybe if Caterpillar did not state that the MOBA system didn't use the lake sensors, the board might have had to have cited to the RX500 evidence. But based on the record before it, it did not have to. So that was the key to it. The RX500, looking at it, all it provided was that manual milling was a tangible benefit, which again was a separate motivation to combine. It was originally advanced in the petition. The petition only, and there's no point in the petition or the expert declaration mentioning manual milling. The petition only discussed shielding the sensors, the external sensors of Swisher, by moving them into the lake cylinders, protecting them from a harsh environment. So you have two distinct differences there. Again, the motivation to combine for the petition was based on a combination to protect the sensors. The reply, the motivation to combine for the obviousness case, was to provide an operator the option of manual milling. And even if we did get to the testimony or exactly what the RX500 evidence discussed was, as my colleague mentioned, there are evidentiary issues with it that were kind of timely raised in front of the board. So again, those were other issues. But we could rule on those in the first instance, right? Yeah, exactly. I agree with my colleague as well that that's not an issue. But it goes to show how far off and why the board did not have to consider the RX500 evidence based upon the record before it, again, with no expert declaration and the statements from Caterpillar. It did not need to be considered or need to be relied on for the adding sensor rationale. Those are two separate things. And I don't think the board said we're not considering it. Indeed, I don't know how one could square that with footnote eight, which does actually consider it. But it did say it wasn't relying on it. Yeah, exactly, Your Honor. You know, as far as relying on it, there's not a citation specifically to the RX500. And again, that's because of the rationales that were allowed to advance, the replacement rationale. Can I just ask one more question again about the RX500, which is the only thing we heard about from the other side? One of the points that Mr. Moroz made, I think, was that in your patent owner response, you said it would be exceedingly difficult to do manual changing of the height of this thing while traveling and that the RX500, whatever else it was, was responsive to that. Is your position that it was not actually responsive to that or that it doesn't really matter because that particular assertion and the one that you made about exceedingly difficult ends up not mattering to the board's analysis of the preserved motivations to make different combinations? I think both, Your Honor. First, with regard specifically to the RX500, one cannot achieve the ability to coincide to a reference plane and mill a roadway to a predetermined grade and cross slope with just manual sensors. Workin's expert testified to these issues, pointing out how internal sensors cannot replace external sensors and how the RX500 is inoperable for its intended purpose if it only had internal lake sensors. There's no testimony from Caterpillar's expert to that point. And second, we do agree also that the RX500 evidence is not responsive because it still has never described or provided an answer to why a person of skill in the field is willing. And, Your Honor, I believe I'm out of time. Yes, you are. All right. Let's go back to Mr. Meraz for his rebuttal. Thank you, Your Honor. This is to Judge Taranto's question about footnote eight and the board's consideration of the road tech evidence. So the board did dance around the road tech evidence a few times in the final written decision, but it never analyzed or considered the manual mode road tech evidence, and it said so. The board consciously and expressly concluded that it was not considering Caterpillar's manual mode argument first. That's in appendix page 29 to 30. And then it said it did not rely on the road tech evidence at all, and that's on appendix page 32. The board even denied Workin's motion to exclude the road tech evidence as moot solely because it chose not to rely on this evidence. That's appendix page 32. We have to take the board at its word. It said what it said, and it didn't rely on the road tech evidence or consider Caterpillar's manual mode argument at all in its analysis. It essentially cut the entire manual mode issue out of the case. And to footnote eight, the board did address road tech and footnote eight, as Judge Taranto mentioned, but it didn't address the manual mode evidence. So in footnote eight, the board first pointed out the Caterpillar's expert, Mr. Labus, didn't rely on the road tech evidence in his analysis. Can I just ask? I'm sorry. Correct me if this is just an oversimplification, but why isn't it fair to read what the board said about manual milling, that one of the combinations proposed in the petition might well have been asserted in the petition to be motivated by something having to do with manual milling. But in fact, that motivation was never presented in the petition, and so it's just not available in the case, and it doesn't matter what Rx500 would say about that because the petitioner didn't preserve that motivation. Sure, Your Honor. So the lake sensor only design was presented in the petition. We did not have the road tech evidence available at the time we filed the petition because it didn't exist yet. Mr. Labus submitted his declaration before we obtained that evidence in the ITC case. And then thirdly, the law doesn't require every bit of evidence to be disclosed in the petition. So we have our initial petition argument, the Swisher-Glasson combination with lake sensors only, and now we have after arising evidence from road tech showing that a person with a skill in the art would make that combination. This is very strong evidence, as I've discussed. It stands on its own. It's part of the administrative record, and there is nothing requiring Caterpillar to funnel every piece of evidence in through its expert. I see my time is over. Unless there are any further questions, I will finish up. Thank you, Your Honors. Thank you, Counsel. The case will be submitted.